Clifton HENSON v. CLUB PRODUCTS and HOME INSURANCE COMPANY

CA 87-137                                      736 S.W.2d 290

Court of Appeals of Arkansas
Division II
Opinion delivered September 30, 1987

*James F. Swindoll, P.A.*, for appellant.

*Lovett Law Firm*, for appellee.

DONALD L. CORBIN, Chief Judge. This appeal comes from the Arkansas Workers' Compensation Commission. Appellant, Clifton Henson, appeals the Commission's finding that he is not entitled to workers' compensation benefits for psychiatric treatment for psychological disorders that appellant claims constituted a pre-existing condition which was aggravated by his compensable burn injury. We affirm.

On June 18, 1982, appellant, Clifton Henson, was in an accident in which he was burned and disfigured while acting in the course and scope of his employment with appellee, Club Products. In February of 1984, appellant was hospitalized for almost two months for severe psychiatric problems.

Appellant's medical and psychiatric history indicates he was admitted to Arkansas State Hospital twice in 1981 and both

times was discharged against medical advice without a formal diagnosis. The medical records indicate appellant was depressed, confused, and believed his life was threatened. The provisional diagnosis for appellant indicated paranoia and alcohol abuse. Appellant was also admitted to Baptist Medical Center psychiatric unit in 1981 for alcohol abuse, emotional and family problems. Appellant was hospitalized in 1982 for his burn injury and also received psychiatric treatment at this time. In 1983 appellant was admitted to Baptist Medical Center for possible abdominal ascites secondary to alcoholic cirrhosis with the diagnosis stating there was abnormal liver function probably secondary to alcohol, no cirrhosis. In 1984, appellant was admitted to the BridgeWay with a diagnosis of major depressive episode and major depressive episode with psychotic features. The BridgeWay's master treatment plan for appellant listed alcohol abuse as one of appellant's problems and observation for DT's as one of his needs. While still being treated at the BridgeWay in 1984, appellant was sent to Riverview Hospital for evaluation of chest pains. The diagnosis revealed alcohol withdrawal, alcohol jealousy, bronchitis, and paranoia.

By an opinion dated July 29, 1986, the Administrative Law Judge found that appellant's medical treatment for the burn injury was compensable, but the psychiatric treatment was not. The full Commission affirmed the Administrative Law Judge in a two to one decision on January 21, 1987, finding that appellant's psychological disorders were not causally connected to his compensable burn injury. The Commission concluded that appellant had been experiencing a progressively deteriorating psychological condition since 1981, prior to his burn injury. The Commission noted that appellant's condition is complicated by his deafness, family problems, alcoholism and substance abuse. The Commission stated that it was apparent that alcoholism was a continuing factor in claimant's progressing emotional disorders. The Commission considered conflicting medical testimony regarding whether appellant's mental disorders were causally connected to his burn injury and held there was no causal connection between the appellant's psychological disorders and his compensable burn injury.

For reversal, appellant makes the following argument with two sub-issues: (I) Claimant suffered an aggravation of a pre-

existing condition which is compensable under Arkansas law; (A) the full Commission erred by not addressing the issue of aggravation of pre-existing condition, therefore, its finding is incorrect as a matter of law; (B) the full Commission's finding that there was no causal connection between the industrial accident and claimant's subsequent psychological treatment is not supported by substantial evidence, and is, therefore, incorrect as a finding of fact.

On appellate review of workers' compensation cases the evidence is reviewed in the light most favorable to the finding of the Commission and given its strongest probative value in favor of its order. The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding. *Bearden Lumber Company* v. *Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983). The extent of our inquiry is to determine if the finding of the Commission is supported by substantial evidence and, even where a preponderance of the evidence might indicate a contrary result, we will affirm if reasonable minds could reach the Commission's conclusion. It is also well settled that the Commission is better equipped by specialization, insight, and experience to translate, analyze, and determine issues and to translate evidence into findings of fact. *Burks* v. *Anthony Timberlands*, 21 Ark. App. 1, 727 S.W.2d 388 (1987). To reverse a decision of the Commission, we must be convinced that fair-minded persons, with the same facts before them, could not have reached the conclusion arrived at by the Commission. *Franklin Collier Farms* v. *Chapple*, 18 Ark. App. 200, 712 S.W.2d 334 (1986).

The principle applicable to the case at bar is addressed by Professor Larson as follows:

> When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.

1 A. Larson, *The Law of Workmen's Compensation* § 13.00 (1985). This principle was accepted by the Arkansas Supreme Court in *Aluminum Company of America* v. *Williams*, 232 Ark.

216, 335 S.W.2d 315 (1960). This court cited *Williams* as follows:

> We conclude that in all of our cases in which a second period of medical complications follows an acknowledged compensable injury we have applied the test set forth in *Williams*—that where the second complication is found to be a natural and probable result of the first injury, the employer remains liable. Only where it is found that the second episode has resulted from an independent intervening cause is that liability affected. While there may be some variance in the words used to describe the principle, there has been no departure from the basic test, i.e., whether there is a causal connection between the two episodes.

*Bearden*, 7 Ark. App. at 71, 335 S.W.2d at 319 (citations omitted).

In the present case, the Commission considered all of the evidence and found no causal connection between appellant's psychological disorders and his compensable burn injury. The medical testimony regarding the causal connection was conflicting. At the hearing, appellant's psychiatrist, Dr. Farrell, testified that claimant's emotional problems were related to his burn injuries. Specifically, Dr. Farrell testified that he found appellant to be psychotic and extremely depressed. He was hallucinating and hearing voices. Dr. Farrell noted that appellant was not in touch with reality and was unable to care for himself at home. Dr. Farrell stated that when appellant was in the BridgeWay, appellant thought he was smelling burning hair. One patient had had her hair permed and appellant smelled that and became extremely paranoid and delusional, which Dr. Farrell interpreted as evidence indicating that appellant's psychiatric problems were the result of the burn.

The record contains evidence that another psychiatrist, Dr. Winston Brown, opined that there was little or no connection between the burn and appellant's psychiatric disorders and that the BridgeWay treatment procedures were not appropriate for appellant. Pertinent parts of Dr. Brown's letter regarding appellant's treatment at the BridgeWay are as follows:

It is quite obvious that alcoholism preceded his burn injury. His working diagnosis by his physician since the burn has been major depressive episodes with psychotic features. It is said the treating physician feels this effective disorder is directly related to his burn.

There are a number of contradictions in the medical records to suggest that this is not an accurate diagnosis for this man. . . .

Because of the contradictions mentioned above, I feel this man's psychiatric treatment may well be aimed toward psychiatric conditions existing before his burn injury. In addition, although it is said that his emotional difficulties are the result of trauma secondary to the injury, I find little, and almost nothing in the records to suggest that any emotional trauma following the accident is being dealt with by his physician or other medical staff members.

The Commission considered the testimony of both doctors and held there was substantial evidence to conclude that there was no causal connection between appellant's emotional problems and his compensable burn injuries. The Commission noted that the descriptions of paranoia, confusion and people trying to harm him were no different than those findings made in 1981 at the Arkansas State Hospital. The Commission also noted that it was apparent that alcoholism was a continuing factor in claimant's progressing emotional disorders and that there is an unexplained gap between his burn injury and his hospitalization at the BridgeWay. The Commission concluded that the lone fact that appellant thought he smelled burning hair after smelling another patient's hair permanent chemicals was not enough to sustain the burden of proving his emotional problems were caused by his burn injuries.

Medical opinions are admissible and frequently helpful in Workers' Compensation cases, but they are not conclusive. *Boyd* v. *General Industries*, 22 Ark. App. 103, 733 S.W.2d 750 (1987). This court held in *Fletcher* v. *Farm Bureau Insurance Company*, 10 Ark. App. 84, 661 S.W.2d 431 (1983), that when medical evidence is conflicting, the resolution of the conflict is a question for the Commission, and when the Commission chooses to accept the testimony of one physician in such cases, the court is

powerless to reverse the decision. In the present case, the Commission resolved the conflicting medical testimony in favor of the appellee and found no causal connection between appellant's psychological disorders and his compensable burn injury. We find there is substantial evidence to support the Commission's finding that appellant failed to show by a preponderance of the evidence that his psychological disorders were causally connected to his burn injury.

Appellant's other contention for reversal is that the Commission erred in failing to address the issue of aggravation of a pre-existing condition. Professor Larson discusses the issue of compensation for aggravation of a pre-existing condition as follows:

> Pre-existing disease or infirmity of the employee does not disqualify a claim under the "arising out of employment" requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought. This is sometimes expressed by saying that the employer takes the employee as he finds him.

1 A. Larson, *The Law of Workmen's Compensation* § 12.20 (1985). Professor Larson addresses the subject of compensation for psychological injuries resulting from trauma by stating that:

> [w]hen there has been a physical accident or trauma, and claimant's disability is increased or prolonged by traumatic neurosis, conversion hysteria, or hysterical paralysis, it is now uniformly held that the full disability, including the effects of the neurosis, is compensable.

1B A. Larson, *The Law of Workmen's Compensation* § 42.22(a) (1987). This rule was restated in *Boyd v. General Industries*, 22 Ark. App. at 108, 733 S.W.2d at 752 (1987), where we stated, "clearly the disabling effects of this type disorder are compensable if the requirement of a causal connection is met." In the case at bar, we hold there is substantial evidence to support the Commission's finding that appellant's psychological disorders are not causally connected to his burn injury.

Without the causal connection, there is no basis for arguing the issue of aggravation of a pre-existing condition. In the

case at bar, the requirement of a causal connection is not met; therefore, the Commission did not err in not finding appellant's psychological disorders compensable as an aggravation of a pre-existing condition.

Affirmed.

COOPER and COULSON, JJ., agree.