Phillip CLAIRDAY *v.* The LILLY COMPANY, Employer, Royal Alliance Insurance Company, Carrier

CA 05-696                                        234 S.W.3d 347

Court of Appeals of Arkansas
Opinion delivered April 19, 2006

[Rehearing denied May 24, 2006.*]

---

* GLADWIN, GRIFFEN, VAUGHT, and CRABTREE, JJ., would grant rehearing.

*John Bartlett*, for appellant.

*Roberts Law Firm, P.A.*, by: *Jeremy Swearingen* and *Emily A. Neal*, for appellees.

OLLY NEAL, Judge. This is an appeal from the Arkansas Workers' Compensation Commission's (Commission) decision that appellant, Phillip Clairday, failed to prove by a preponderance of the evidence that he was entitled to temporary-total-disability compensation after April 24, 2003. For reversal, appellant argues that there is no substantial basis supporting the Commission's findings that the surgery he requested was not causally related to his April 30, 2002, work-related injury. We reverse and remand.

The facts are these. Appellant worked for appellee Lilly as a forklift technician, mechanic, and delivery driver. On April 30, 2002, while performing employment services, appellant was injured when he reached down to release a boom on a chain and it pulled him "straight back down," immediately causing him pain in his lower back. Appellant reported the incident and was seen by a doctor on May 1. The injury was accepted as compensable and medical benefits were awarded.

During his treatment, appellant saw numerous doctors. In reversing the administrative law judge and denying appellant's claim for additional temporary-total disability, the Commission stated that it gave greater weight to the opinions of Drs. Kornblum, Sorenson, Schnapp, Gera, and Moore, stating:

The Full Commission recognizes that the claimant continued to receive some pain management after the end of the claimant's healing period on April 24, 2003. Nevertheless, the persistence of pain does not prevent a finding that the claimant's healing period is over. Mad Butcher, Inc. v. Parker, 4 Ark. App. 124, 628 S.W.2d 582 (1982). The Full Commission also recognizes Dr. Eubanks' statement in February 2004, nearly two years after the compensable injury, that there may have been a "misdiagnosis" and that the claimant might need surgery. This speculative opinion by Dr. Eubanks was never confirmed in the record. The Full Commission attaches great weight in the present matter to the expert opinions of Dr. Kornblum, Dr. Sorenson, Dr. Schnapp, Dr. Gera, and Dr. Moore. None of these physicians opined that the claimant remained within his healing period or that there had been a misdiagnosis, and Dr. Schnapp expressly opined that the claimant had reached maximum medical improvement [MMI] as of April 24, 2003. The Full Commission reverses the administrative law judge's award of temporary total disability compensation after April 24, 2003.

This appeal followed. In reviewing decisions of the Commission, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirms the decision if it is supported by substantial evidence. *Geo Specialty Chem. v. Clingan*, 69 Ark. App. 369, 13 S.W.3d 218 (2000). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Air Compressor Equip. v. Sword*, 69 Ark. App. 162, 11 S.W.3d 1 (2000). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Geo Specialty, supra.* It is the Commission's function to determine witness credibility and the weight to be afforded to any testimony; the Commission must weigh the medical evidence and, if such evidence is conflicting, its resolution is a question of fact for the Commission. *Searcy Indus. Laundry, Inc. v. Ferren*, 82 Ark. App. 69, 110 S.W.3d 306 (2003). The Commission's resolution of the medical evidence has the force and effect of a jury verdict. *Jim Walter Homes v. Beard*, 82 Ark. App. 607, 120 S.W.3d 160 (2003).

Our supreme court has said that "temporary total disability" is that period within the "healing period" in which the employee suffers a total incapacity to earn wages. *Fred's Inc., v. Jefferson*, 361

Ark. 258, 206 S.W.3d 238 (2005). Our statutes define "healing period" as "that period for healing of an injury resulting from an accident." Ark. Code Ann. § 11-9-102(12) (Repl. 2002). The healing period ends when the underlying condition causing the disability has become stable and nothing in the way of treatment will improve that condition; the determination of when the healing period has ended is a factual determination for the Commission and will be affirmed on appeal if supported by substantial evidence. *Poulan Weed Eater v. Marshall,* 79 Ark. App. 129, 84 S.W.3d 878 (2002); *K II Constr. Co. v. Crabtree,* 78 Ark. App. 222, 79 S.W.3d 414 (2002).

█ We hold that substantial evidence does not support the conclusion of the Commission. The Commission stated that it gave greater weight to the opinions of Drs. Kornblum, Sorenson, Schnapp, Gera, and Moore, and it was correct in its assertion that none of them opined that appellant remained within his healing period or that there had been a misdiagnosis. However, the record does not reflect that any of these doctors, other than Dr. Schnapp, gave an opinion or were asked to give an opinion as to whether appellant had reached the end of his healing period. Nevertheless, Dr. Moore, a neurosurgeon, opined, even after it was determined that appellant had reached MMI, that "an EMG/Nerve Conduction Velocity Study [NCV] might be of some value as well as myelographic survey with contrasted CT if this has not already been done[.]" These tests are diagnostic in nature.[1] We recognize that the Commission is not required to believe the testimony of any witness, and it may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief

---

[1] The EMG/NCV tests the nerves and muscles of the entire lower extremity. The EMG portion of the test is used to record the electrical activity in the muscles and can diagnose diseases of the nerves and muscles. Dr. Matthew Rockett, D.P.M., *Electromyography (EMG)/Nerve Conduction Velocity (NCV), at,* http://podiatrynetwork.com; *see also,* THE SLOANE-DORLAND ANNOTATED MEDICAL-LEGAL DICTIONARY (West 1987). The NCV portion of the test evaluates the health of the peripheral nerve by recording how fast electrical impulse travels through it. Dr. Matthew Rockett, D.P.M., *Electromyography (EMG)/Nerve Conduction Velocity (NCV), at,* http://podiatrynetwork.com. A myelogram is done to detect narrowing of the spinal canal or abnormalities of the nerves branching off the canal, which may be caused by spinal stenosis, herniated disc, a tumor or infection; it is usually accompanied by a CT scan and may help to verify the cause of pain that could not be found by other imaging methods. *Id.; see also* THE SLOANE-DORLAND ANNOTATED MEDICAL-LEGAL DICTIONARY (West 1987).

and furthermore that the Commission has the authority to accept or reject medical opinions and determine their medical soundness and probative force. *See Brotherton v. White River Area Agency*, 93 Ark. App. 432, 220 S.W.3d 219 (2005); *Jim Walter Homes v. Beard, supra.* The Commission here, however, did not reject Dr. Moore's medical opinion that appellant needed further medical treatment; instead, it specifically relied on him and gave great weight to his expert opinion. As such, we hold that the Commission erred in determining that appellant failed to prove by a preponderance of the evidence that he was entitled to temporary-total-disability compensation after April 24, 2003, as he clearly was in need of the additional medical testing as recommended by Dr. Moore's expert opinion on which the Commission relied.

Reversed and remanded.

HART, BIRD, GLOVER and ROAF, JJ., agree.

GLADWIN, GRIFFEN, VAUGHT and CRABTREE, JJ., dissent.

ROBERT J. GLADWIN, Judge, dissenting. I respectfully dissent. In reversing the Commission's opinion, the majority has taken on the role of fact finder. The majority's brief recitation of the facts is adequate. Our standard of review is clear. In reviewing the decisions of the Commission, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirms the decision if it is supported by substantial evidence. *Geo Specialty Chem. v. Clingan*, 69 Ark. App. 369, 13 S.W.3d 218 (2000). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion. *Air Compressor Equip. v. Sword*, 69 Ark. App. 162, 11 S.W.3d 1 (2000). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Geo Specialty, supra.* It is the Commission's function to determine witness credibility and the weight to be afforded to any testimony. *Wal-Mart Stores, Inc. v. Stotts*, 74 Ark. App. 428, 58 S.W.3d 853 (2001). The Commission must weigh the medical evidence and, if such evidence is conflicting, its resolution is a question of fact for the Commission. *Searcy Indus. Laundry Inc. v. Ferren*, 82 Ark. App. 69, 110 S.W.3d 306 (2003).

The majority holds that substantial evidence does not support the Commission's conclusion that appellant had reached maximum medical improvement. In doing so, the majority simply

disregarded Dr. Schnapp's opinion that appellant had reached the end of his healing period on April 24, 2003. No other doctor indicated that appellant had not reached the end of his healing period. It is well settled that the mere persistence of pain does not prevent a finding that the healing period has ended so long as the underlying condition has stabilized. *See Georgia-Pacific Corp. v. Dickens*, 58 Ark. App. 266, 950 S.W.2d 463 (1997).

Dr. Schnapp's April 24, 2003 report states, "I believe that at the present time, he has reached maximum medical improvement. I would like to have a brief function capacity assessment, and after that, I will come up with a permanent physical impairment for him. I doubt that he will be able to lift 150 pounds lightly like he claims that he has to do at work and I told him so. I will release him to go back to work with limitations next week." On May 23, 2003, Dr. Schnapp gave appellant a five percent permanent physical impairment rating to the body as a whole. These reports clearly support the Commission's findings.

The majority relies on the report of Dr. Moore to find that appellant had not reached maximum medical improvement. However, Dr. Moore does not state that appellant had not reached maximum medical improvement. In his report, Dr. Moore states, "I think that if Dr. Eubanks is his official physician neurosurgeon that a repeat diskogram as recommended is within his sphere of control. It might very well give some further light on this patient's problems, although I tried to point out to the patient that when the classic pattern of findings is at variance the success rate for corrective surgery falls precipitously. I do think that an EMG/Nerve Conduction Velocity Study might be of some value as well as [a] myelographic survey with contrasted CT if this has not already been done . . . ."

Assuming that Dr. Moore's statement meant that appellant had not reached maximum medical improvement, and clearly that is questionable, it was within the Commission's province to give greater weight to Dr. Schnapp's opinion that appellant's healing period had indeed ended. The Commission is not required to believe the testimony of any witness, and it may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Holloway v. Ray White Lumber Co.*, 337 Ark. 524, 990 S.W.2d 526 (1999). Furthermore, the Commission has the authority to accept or reject medical opinions and determine their medical soundness and probative force. *See Brotherton v. White River Area Agency on Aging*, 93 Ark. App. 432, 220

S.W.3d 219 (2005). Dr. Schnapp's unequivocal opinion that appellant had reached maximum medical improvement on April 24, 2003, constituted substantial evidence to affirm the Commission's decision.

GRIFFEN, VAUGHT, CRABTREE, JJ., join.