

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV–13–535

| | |
|---|---|
| E. LEON JACKSON<br><div align="right">APPELLANT</div><br>V.<br><br><br>O'REILLY AUTOMOTIVE INC. and<br>GALLAGHER BASSETT SERVICES<br>INC.<br><div align="right">APPELLEES</div> | **Opinion Delivered** DECEMBER 18, 2013<br><br>APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION<br>[NO. G104519]<br><br><br><br>AFFIRMED |

### DAVID M. GLOVER, Judge

The issue in this workers' compensation case is whether appellant Leon Jackson's left-knee replacement surgery was reasonable and necessary medical treatment for his admittedly compensable left-knee injury. The administrative law judge (ALJ) determined that the surgery was reasonable and necessary and awarded Jackson temporary total-disability benefits from October 3, 2011, until January 3, 2012. The Commission reversed the ALJ's determination, finding that Jackson had failed to prove that his need for a total left-knee replacement was necessitated by his compensable knee injury and dismissing the case. Jackson now appeals, arguing that reasonable minds could not conclude that his knee replacement was not reasonable and necessary medical treatment arising out of his compensable injury. We affirm the Commission's decision.

SLIP OPINION

Jackson, a counter salesman for O'Reilly Auto Parts, sustained a compensable injury to his left knee on February 24, 2011, when a co-worker kicked Jackson in the knee. O'Reilly accepted the injury as compensable and paid benefits for conservative treatment. These conservative measures did not alleviate Jackson's symptoms, and he was referred to the South Arkansas Orthopedics and Sports Medicine Clinic, where he was seen by Dr. Kenneth Gati. Dr. Gati ordered an MRI, which revealed evidence of a medial meniscus tear and a degenerative pattern of horizontal type tears in Jackson's lateral meniscus. Dr. Gati ordered a steroid injection, but this measure did not provide Jackson relief, so the doctor scheduled Jackson for left-knee arthroscopic partial medial and lateral meniscectomies. Jackson continued to complain of left-knee pain after these procedures. On August 2, 2011, Dr. Gati noted at Jackson's follow-up appointment his belief that most of Jackson's pain was "just related to osteoarthritis of his knee," and that the only issue remaining was Jackson's knee arthritis, which preexisted his knee injury. Dr. Gati assessed a ten-percent impairment rating to the left lower extremity for the partial medial and partial lateral meniscectomies. He further noted that his recommendation for Jackson's arthritic knee pain was a total knee arthroplasty (replacement), and that he would schedule that surgery for Jackson through his private insurance. Jackson underwent the left-knee replacement on October 3, 2011. Dr. Gati released him from his care on November 30, 2011, and authorized Jackson to return to work on January 3, 2012.

In *Murray v. Stant Manufacturing Gallagher Bassett Services*, 2010 Ark. App. 289, at 1–2, this court set forth our standard of review in workers' compensation cases:

> In reviewing decisions from the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the



Commission's findings, and we affirm if the decision is supported by substantial evidence. *Whitlach v. Southland Land & Dev.*, 84 Ark. App. 399, 141 S.W.3d 916 (2004). Substantial evidence is that relevant evidence which reasonable minds might accept as adequate to support a conclusion. *K II Constr. Co. v. Crabtree*, 78 Ark. App. 222, 79 S.W.3d 414 (2004). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Geo. Specialty Chem., Inc. v. Clingan*, 69 Ark. App. 369, 13 S.W.3d 218 (2000).

Arkansas Code Annotated section 11-9-508(a) (Supp. 2009) requires an employer to provide an injured employee such medical services "as may be reasonably necessary in connection with the injury received by the employee." The employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonable and necessary. *Stone v. Dollar Gen. Stores*, 91 Ark. App. 260, 209 S.W.3d 445 (2005). What constitutes reasonable and necessary medical treatment is a question of fact to be determined by the Commission. *Bohannon v. Wal-Mart Stores, Inc.*, 102 Ark. App. 37, 279 S.W.3d 502 (2008).

Questions concerning credibility of witnesses and weight to be given to their testimony are within the exclusive province of the Commission. *Cedar Chem. Co. v. Knight*, 372 Ark. 233, 273 S.W.3d 473 (2008). When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief; this court is foreclosed from determining the credibility and weight to be accorded to each witness's testimony. *Id.* The Commission has the authority to accept or reject a medical opinion and the authority to determine its probative value. *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 84 S.W.3d 878 (2002). While it is within the province of the Commission to weigh conflicting evidence, the Commission may not arbitrarily disregard medical evidence. *Vite v. Vite*, 2010 Ark. App. 565, 377 S.W.3d 453.



Jackson argues on appeal that his compensable injury was an aggravation of his preexisting arthritis and therefore his left-knee replacement was reasonably and necessarily related to his compensable injury. Jackson points to the fact that, although he had a piece of torn ligament removed from his left knee in 1994, his knee was asymptomatic for fifteen years, and it only became symptomatic after his compensable injury.

For purposes of workers' compensation law, an employer takes an employee as he finds him; an aggravation of a preexisting noncompensable condition by a compensable injury is, itself, compensable. *Heritage Baptist Temple v. Robison*, 82 Ark. App. 460, 120 S.W.3d 150 (2003). An employee is not required to prove that his compensable injury is the major cause for the need for treatment unless he is seeking permanent benefits; when the employee has suffered a specific injury and is only seeking medical benefits and temporary total disability, the major-cause analysis is not applicable and the employee need only show that the compensable injury was a factor in the need for additional medical treatment. *Williams v. L & W Janitorial, Inc.*, 85 Ark. App. 1, 145 S.W.3d 383 (2004).

In *Williams*, *supra*, this court reversed the Commission's denial of benefits, holding that the medical doctors were under the mistaken belief that Williams's knee injury had to be the major cause for her need for knee replacement, which was incorrect. This court noted that both doctors had testified that, while not the major cause for Williams's knee replacement, her compensable injury had at least been a factor in her need for knee replacement.

In the present case, Dr. Gati stated that the February 2011 compensable injury would not be the major cause of the need for knee replacement. As we held in *Williams*, however,

SLIP OPINION

this is an incorrect premise, because Jackson was only seeking additional medical benefits and temporary total disability. Moreover, unlike the doctors in *Williams*, Dr. Gati would not say that Jackson's compensable injury was even a factor in Jackson's need for a knee replacement:

> Q. But in this case there is no other explanation, causal explanation, in his medical history or medical records that started that ball rolling down the hill and him getting that treatment. He was asymptomatic, got kicked in the knee, ultimately needed a replacement. Whether it was lying dormant, he was not having problems, etcetera. The trauma, at least, persisted and elevated the problems to the point that he needed that replacement because he was not getting relief from any other treatment. Is that an accurate statement?
>
> A. His knee replacement followed a traumatic injury to his knee, but I can't say that his knee replacement was ever related to his traumatic injury. You've asked me over and over and I cannot say within a medical degree of certainty that the traumatic injury caused him to have knee replacement.

Dr. Gati never opined that Jackson's compensable injury was even a factor in Jackson's need for a total left-knee replacement—it was his opinion that the arthritis was the need for the knee replacement; the Commission found his testimony to be credible, consistent, and unequivocal that the need for Jackson's knee replacement was not causally connected to his compensable injury. Thus, Dr. Gati does not provide a causal connection between Jackson's compensable injury and Jackson's need for a knee replacement. Therefore, it cannot be said that the compensable injury aggravated the preexisting noncompensable condition of arthritis in Jackson's left knee that caused the need for a total knee replacement, and the Commission's decision that the knee replacement was not reasonable and necessary to treat Jackson's compensable injury must be affirmed.

Affirmed.

WALMSLEY and VAUGHT, JJ., agree.

*F. Mattison Thomas, III*, for appellant.
*Bassett Law Firm, LLP*, by: *Curtis L. Nebben*, for appellees.